UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rockwood Retaining Walls, Inc.;
Raymond R. Price; Gerald P. Price;
GLS Industries, Inc.; and Equipment, Inc.,

        Plaintiffs,

v.

Patterson, Thuente, Skaar &
Christensen, P.A.,

        Defendant.

Civil No. 09-2493 (DWF/FLN)

**MEMORANDUM
OPINION AND ORDER**

---

Phillip Gainsley, Esq., counsel for Plaintiffs.

Bryan R. Feldhaus, Esq., Phillip A. Cole, Esq., and Timothy C. Matson, Esq., Lommen, Abdo, Cole, King & Stageberg, PA, counsel for Defendant.

---

This matter is before the Court pursuant to the following motions: (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 35); (2) Defendant's Motion for Summary Judgment (Doc. No. 51); and (3) Defendant's Motion to Dismiss for failure to comply with Minn. Stat. Section 544.42 (Doc. No. 53).[1] For the reasons set forth below, the Court denies all three motions.

---

[1] Defendant also filed and briefed a fourth motion, a Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 30), but withdrew that motion just prior to oral argument on the matter. (*See* Doc. No. 89.)

## BACKGROUND

This matter comes to the Court with a tortured procedural history. An underlying patent infringement action was commenced in the United States District Court for the District of Minnesota on September 3, 1999. *Anchor Wall Systems v. Rockwood Retaining Walls, Inc., et al.*, (D. Minn. Civ. No. 99-1356 JRT/FLN). In that case, Anchor alleged that Rockwood infringed certain Anchor patents. By Orders dated April and August 2002, United States District Judge David S. Doty granted summary judgment on noninfringement and entered judgment in favor of Rockwood. (99-1356, Doc. Nos. 105, 111.) Anchor appealed to the Federal Circuit Court of Appeals, and in October 2003, the Federal Circuit affirmed in part and reversed in part Judge Doty's decision. Then, the case returned to this District and was reassigned to U.S. District Judge John R. Tunheim. (99-1356, Doc. No. 119.) In February 2005, after a great deal of motion practice, the case was stayed pending re-examination by the United States Patent and Trademark Office. (99-1356, Doc. No. 305.) Judge Tunheim vacated the stay in September 2006. (99-1356, Doc. No. 318.) Then, after additional motion practice, Judge Tunheim began a jury trial on infringement and invalidity on January 22, 2008. (99-1356, Doc. No. 583.) The jury ultimately returned a verdict of $24,185,484 in damages in favor of Anchor on March 3, 2008, and Judge Tunheim entered judgment. (99-1356, Doc. Nos. 645, 646.) The parties subsequently filed a multitude of post-trial motions and Judge Tunheim ruled on these motions in March 2009. (99-1356, Doc. No. 829.) Rockwood then filed an appeal with the Federal Circuit in April 2009. (99-1356, Doc. No. 834.) Subsequently,

in July 2009, the parties agreed to a post-verdict settlement that disposed of all issues (including appeals) in the case. (*See* 99-1356, Doc. No. 841.)

In September 2009, Plaintiffs Rockwood Retaining Walls, Inc. ("Rockwood"), Raymond R. Price, Gerald P. Price, GLS Industries, Inc., and Equipment, Inc., filed this legal malpractice action in Hennepin County District Court against Defendant Patterson, Thuente, Skaar & Christensen, P.A. (the "Law Firm"). It appears that the Law Firm was served on September 10, 2009. (Doc. No. 1-3[2] at 3.) The Law Firm removed the case to this Court on September 15, 2009. (Doc. No. 1.) On December 22, 2009, this Court granted the Law Firm's motion to dismiss Plaintiffs' Amended Complaint. (Doc. No. 27.) Specifically, the Court ordered that the Amended Complaint was dismissed without prejudice and that "Plaintiffs shall have thirty days from the date of this Order to file a Second Amended Complaint." (*Id*. at 16.)

Plaintiffs filed their Second Amended Complaint on January 19, 2010. (Doc. Nos. 28, 29.) The current motions stem from that Second Amended Complaint.

**I.      Motion to Dismiss—Minn. Stat. § 544.42**

As a preliminary matter, the Law Firm moves to dismiss Plaintiffs' Second Amended Complaint with prejudice for failure to comply with the expert certification requirements of Minn. Stat. § 544.42. Section 544.42 requires parties to serve expert affidavits in actions of negligence or malpractice claims brought against attorneys. Minn. Stat. § 544.42, subd. 1(1). Specifically, the statute requires:

---

[2]      Unless otherwise specified, all subsequent docket citations refer to the present case, Civ. No. 09-2493.

3

In an action against a professional alleging negligence or malpractice in rendering a professional service where expert testimony is to be used by a party to establish a prima facie case, the party must:

(1) unless otherwise provided in subdivision 3, paragraph (a), clause (2) or (3), serve upon the opponent with the pleadings an affidavit as provided in subdivision 3; and

(2) serve upon the opponent within 180 days an affidavit as provided in subdivision 4.

Minn. Stat. § 544.42. Subdivision 4 describes the affidavit of expert identification at issue here, as follows:

**Subd. 4. Identifying experts to be called; adding or substituting experts.** (a) The affidavit required by subdivision 2, clause (2), must be signed by the party's attorney and state the identity of each person whom the attorney expects to call as an expert witness at trial to testify with respect to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the party's attorney and served upon the opponent within 180 days after commencement of the action against the defendant or within 180 days after service of the affidavit required by subdivision 3, paragraph (a), clause (2) or (3).

(b) The parties by agreement, or the court for good cause shown, may provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision prevents any party from calling additional expert witnesses or substituting other expert witnesses.

Subdivision 6 of the statute states that failure to comply with subdivision 4:

results, upon motion, in mandatory dismissal of each action with prejudice as to which expert testimony is necessary to establish a prima facie case, provided that an initial motion to dismiss an action under this paragraph based upon claimed deficiencies of the affidavit or answers to interrogatories shall not be granted unless, after notice by the court, the nonmoving party is given 60 days to satisfy the disclosure requirements in subdivision 4.

4

Minn. Stat. § 544.42, subd. 6(c).

The Law Firm asserts that Plaintiffs have not provided an affidavit of expert identification within 180 days of commencement of the action as required by the statute. Further, the Law Firm contends that Plaintiffs have not identified an expert witness who is qualified to provide expert testimony regarding claims of legal malpractice in patent litigation pursuant to § 544.42 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Law Firm contends that Plaintiffs' failures warrant mandatory dismissal of Plaintiffs' claims pursuant to Minn. Stat. § 544.42, subd. 6(c). Further, the Law Firm asserts that, pursuant to *House v. Kelbel*, 105 F. Supp. 2d 1045 (D. Minn. 2000), the 60-day grace period of subdivision 6(c) only applies to allow a plaintiff to cure substantive deficiencies of an affidavit that has been timely filed within the 180-day window, but does not apply when a plaintiff fails to file any affidavit whatsoever within the 180-day period.

Plaintiffs, on the other hand, contend that the Court's December 22, 2009 Order–in which the Court dismissed Plaintiffs' claims without prejudice and allowed Plaintiffs leave to file a Second Amended Complaint—rendered the previous proceedings a nullity and thus commenced, pursuant to Minn. Stat. § 544.42, a new 180-day period from the date on which Plaintiffs filed the Second Amended Complaint—January 19, 2010. Thus, Plaintiffs assert that their affidavit of expert identification is not due until July 16, 2010. Further, Plaintiffs note that on February 9, 2010, the Law Firm demanded compliance with § 544.42 (*see* Doc. No. 34), and Plaintiffs assert that they complied with this

demand by serving the Gainsley affidavit of expert review on April 8, 2010. (*See* Gainsley Aff. ¶ 2, Ex. 1 (Doc. No. 74).)

It is undisputed that Plaintiffs did not provide the affidavit of expert identification required by subdivision 4 within 180 days of the service of the initial Complaint on September 10, 2009. However, on the specific facts of this case, the Court finds that good cause exists to extend the time limits of section 544.42 to begin at the time of the service of the Second Amended Complaint. *See* Minn. Stat. § 544.42, subd. 4(b). In so holding, the Court does not find that lawyer inadvertence is "good cause" for a deadline extension. Rather, the Court recognizes that if the Court had disposed of the case differently--namely, by dismissing the Amended Complaint without Prejudice and entering judgment in the case—the 180-day period prescribed by section 544.42 likely would have begun anew upon Plaintiffs' commencement of a new action. It is only by the Court's specific disposition of the Amended Complaint that Plaintiffs were put in this position of not having the 180-day period re-start. As such, the Law Firm's motion to dismiss for failure to comply with Minn. Stat. § 544.42 is denied.

The Law Firm also asserts that Plaintiffs' expert, Justin H. Perl, is not qualified to testify as a patent litigation expert on a legal malpractice matter. At this early stage, the record is insufficient for the Court to make a dispositive decision related to the admissibility of Mr. Perl's opinions or qualifications. Any questions regarding the foundation for Perl's testimony can be raised closer to trial and might be more properly dealt with on a Federal Rules of Evidence 104 motion or a motion in limine at the

6

pre-trial stage, absent settlement of the matter. The Law Firm's motion to dismiss is denied.[3]

**II.    Summary Judgment Motions**

Turning to the summary judgment motions, Plaintiffs seek partial summary judgment, alleging that the Law Firm was negligent:  (1) in failing to respond timely and completely to contention interrogatories, resulting in the trial court's order precluding Plaintiffs from arguing defenses identified after the close of discovery; and (2) in failing to argue the issue of inducement of infringement prior to trial, or to sufficiently protect the record to raise the issue subsequent to trial. The Law Firm, both in response to Plaintiffs' motion and in its own motion for summary judgment, contends that certain defenses were precluded because of Plaintiffs' own tardy disclosure of corroborating evidence. Moreover, the Law Firm submits that a finding of negligence or legal malpractice based on the Law Firm's litigation strategies is inappropriate.

---

[3]    Moreover, the Court takes issue with the Law Firm's characterization of Mr. Perl's qualifications. In discussing Mr. Perl's testimony in their opening brief on the Motion to Dismiss, the Law Firm states:

> Common sense, not always something with which "experts" are blessed, tells us that Perl is not conveying expert opinions but is experimenting with a new form of legal voodoo that permits him simply to massage the arguments in a lawsuit and declare with confidence the winners and losers. It is easier to envision him on a street corner in Minneapolis with a sandwich board over his shoulders than seated in a witness chair.

(Doc. No. 55 at 15.) Such inflammatory language goes beyond the bounds of zealous advocacy and is utterly intolerable before this Court. Any similar behavior will be subject to sanction in the future.

### A. Invalidity Defense

Plaintiffs allege that certain discovery and disclosure failures demonstrate the Law Firm's negligence in representing Plaintiffs in the underlying case. Specifically, Plaintiffs contend that the Law Firm missed a discovery cut-off date that ultimately resulted in Plaintiffs' inability to raise an invalidity defense at trial that, if it had been permitted, would have resulted in a different jury verdict.

In the underlying action, Anchor alleged that Rockwood infringed certain Anchor patents. The matter involved two different families of patents—the Diamond retaining wall block (the '015 Patent family) and the Vertica retaining wall block (the '363 Patent family). In response to Anchor's interrogatories regarding invalidity, the Law Firm initially identified three pieces of prior art. According to Plaintiffs here, the Law Firm's response (and the cited prior art) related only to the '015 Patent family but did not address any prior art that would invalidate or render unenforceable the '363 Patent family. Then, according to Plaintiffs, over a year and a half later and over a month after the close of discovery, the Law Firm served a supplemental discovery response that purported to identify prior art to the '363 Patent family—namely, the Rockwood Classic Block. At that time, Anchor moved in limine to limit Plaintiffs' evidence and arguments on invalidity and enforceability to those identified in their responses to interrogatories served before the close of discovery. Judge Tunheim ruled in favor of Anchor and excluded from trial the defense of invalidity based on the Rockwood Classic Block. (99-1356, Doc. No. 199.)

In its response to Plaintiffs' motion, and in its own motion for summary judgment, the Law Firm contends that it could not have timely asserted an invalidity defense based on the Rockwood Classic Block because Plaintiffs themselves failed to present any objective evidence to corroborate that defense until after the discovery deadline had passed. Thus, the Law Firm contends that it was Plaintiffs', not the Law Firm's, fault that the Rockwood Classic Block was not identified as prior art before the discovery deadline.

The Court finds that genuine issues of material fact exist to preclude summary judgment for either party on this issue. Namely, questions remain as to whether the Law Firm had the information regarding the Rockwood Classic Block in its possession in time to meet discovery deadlines. As such, summary judgment is denied in this regard.

### B.  Inducement of Infringement

Plaintiffs assert that the Law Firm failed to argue the issue of inducement of infringement prior to trial, or to protect the record sufficiently so that the issue could be raised subsequent to trial. Specifically, Plaintiffs point to the Law Firm's failure to timely raise Judge Doty's April 2002 Order as a defense to inducement. Plaintiffs argue that Rockwood could not have the requisite intent to induce infringement during the sixteen-month period between Judge Doty's order granting summary judgment on noninfringement and the Federal Circuit's reversal. Moreover, Plaintiffs contend that the Law Firm failed to timely raise other arguments related to inducement, such as dismissal of the Price brothers and whether a corporation with no employees could induce infringement. It appears that at the post-trial stage, Judge Tunheim ruled that all of these

9

arguments were made too late and thus waived. Plaintiffs point to a number of the Law Firm's post-trial arguments made on Plaintiffs' behalf as evidence that the Law Firm was negligent in failing to raise these issues in a timely manner and that the Law Firm's negligence was the proximate cause of Plaintiffs' damages.

The Law Firm asserts that Plaintiffs challenge the Firm's reasonable litigation strategy regarding inducement. The Law Firm contends that it believed that Judge Doty's order would be admitted as evidence corroborative of Plaintiffs' belief that they were not infringing, and the fact that Judge Tunheim ruled that Judge Doty's order would not be admitted does not point to the Law Firm's negligence. Finally, the Law Firm contends that its statements made in post-trial briefing cannot be transformed into adverse admissions against it.

The Court finds that both parties' motions for summary judgment are premature. The Court is not willing to decide this issue on the merits at this stage of the litigation or based on dueling expert affidavits that do not take into account a fully-developed record. The Court finds that this matter will be resolved more properly once the Law Firm has answered, Plaintiffs have been given access to their file, discovery has concluded, and the Court is presented with a full record for review. As such, the parties' motions are denied.

In so holding, the Court does not intend to imply that it has weighed in on the merits of either side of the litigation or that the Court encourages an outcome that would result in additional prolonged litigation. The Court notes that legal malpractice is difficult to prove and could result in additional extremely expensive litigation costs to both parties. The Court believes that it may be in the best interest of all parties to resolve

this matter without incurring further costs of litigation. If the parties wish to seek early mediation in the matter, the Court encourages the parties to contact Cathy Orlando, Calendar Clerk for Magistrate Judge Franklin L. Noel at 612-664-5110, to schedule an early settlement conference.

## ORDER

1. Defendant's Motion to Dismiss (Doc. No. [53]) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Doc. No. [51]) is **DENIED**; and

3. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. [35]) is **DENIED**.

Dated: July 14, 2010
            s/Donovan W. Frank
            DONOVAN W. FRANK
            United States District Judge