UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rockwood Retaining Walls, Inc.;<br>Raymond R. Price; Gerald P. Price;<br>GLS Industries, Inc.; and Equipment, Inc.,<br><br>    Plaintiffs,<br><br>v.<br><br>Patterson, Thuente, Skaar &<br>Christensen, P.A.,<br><br>    Defendant. | Civil No. 09-2493 (DWF/FLN)<br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

Phillip Gainsley, Esq., counsel for Plaintiffs.

Bryan R. Feldhaus, Esq., Kay Nord Hunt, Esq., Phillip A. Cole, Esq., and Timothy C. Matson, Esq., Lommen, Abdo, Cole, King & Stageberg, PA, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on a *Daubert* Motion to Strike Opinion Testimony of Michael R. Simac and a Motion to Strike Declaration of Michael R. Simac, both brought by Plaintiffs Rockwood Retaining Walls, Inc., Raymond R. Price, Gerald P. Price, GLS Industries, Inc., and Equipment, Inc. (collectively, "Rockwood"). For the reasons set forth below, the motions are denied.

## BACKGROUND

This is an action for legal malpractice. The underlying patent infringement action was commenced in the United States District Court for the District of Minnesota on

September 3, 1999. *Anchor Wall Systems v. Rockwood Retaining Walls, Inc., et al.*, (D. Minn. Civ. No. 99-1356 JRT/FLN) (the "Anchor Case"). In that case, Anchor alleged that Rockwood infringed certain Anchor patents. After a long and complicated procedural history, a jury trial on infringement and invalidity commenced on January 22, 2008. (99-1356, Doc. No. 583.) The jury ultimately returned a verdict of $24,185,484 in damages in favor of Anchor on March 3, 2008, and judgment was entered. (99-1356, Doc. Nos. 645, 646.) Rockwood filed an appeal with the Federal Circuit in April 2009. (99-1356, Doc. No. 834.) Subsequently, in July 2009, the parties agreed to a post-verdict settlement that disposed of all issues (including appeals) in the case. (*See* 99-1356, Doc. No. 841.)

In September 2009, Rockwood filed this legal malpractice action in Hennepin County District Court against Defendant Patterson, Thuente, Skaar & Christensen, P.A. (the "Law Firm"), counsel for Rockwood in the Anchor Case. The Law Firm removed the case to this Court on September 15, 2009. (Doc. No. 1.) In the Second Amended Complaint, Rockwood asserts that, in the Anchor Case, the Law Firm failed to timely disclose the defense of invalidity of Anchor's patents, U.S. Patent Nos. 5,490,363 (the "'363 Patent"); 5,704,183 (the "'183 Patent"); and 5,711,129 (the "'129 Patent") (collectively, the "Vertica Patents"), based on Rockwood's Classic block. (Doc. No. 28 ¶ 3.) Rockwood asserts that had that invalidity defense been asserted, they more likely than not would have succeeded in demonstrating that the Vertica Patents were anticipated by Rockwood's Classic block and the Vertica Patents would have been invalidated. (*Id.* ¶ 4.)

2

The Law Firm has retained Michael R. Simac, P.E., as an expert in this case. Simac "performed a review of the patent documents, drawings, and some case records to formulate [his] opinions as a party 'skilled in the art' for this case." (Decl. of Phillip Gainsley ("Gainsley Decl.") ¶ 2, Report of Michael R. Simac ("Simac Report") at 1.) Without taking Simac's deposition, Rockwood moved to exclude his testimony on May 19, 2011. Rockwood supported the motion in part with two declarations challenging Simac's qualifications and opinions. (*See* Decl. of Dennis D. Larsen ("Larsen Decl."); Decl. of Kelly Morrell ("Morrell Decl.").) On June 8, 2011, in support of its opposition to Rockwood's motion, the Law Firm filed the Declaration of Michael Simac, P.E. ("Simac Decl."). (Doc. No. 123.) On June 13, 2011, Rockwood moved to strike the Simac Declaration, arguing that it was an untimely expert report.

The Court addresses Rockwood's motions below. Because Rockwood argues that those portions of the Law Firms's brief opposing the *Daubert* motion that rely on the Simac Declaration should be stricken along with the Declaration, the Court first addresses the later-filed motion to strike.

## DISCUSSION

### I.      Motion to Strike the Simac Declaration

Rockwood asserts that the Simac Declaration is tantamount to a new expert report and is untimely because the pretrial schedule required the parties to provide full disclosure of the substance of expert testimony by April 1, 2011.[1] Rockwood asserts that

---

[1]  Rockwood consented to the Law Firm providing expert disclosure a few days late, and the Simac Report was served on April 7, 2011.

in evaluating untimely expert testimony, courts apply a four-factor test examining the importance of the testimony, the explanation for the failure to timely disclose, the potential prejudice, and the ability to cure the prejudice by granting a continuance. Rockwood argues that here the untimely testimony is not important, that no excuse has been offered for the untimely disclosure, that Rockwood was permitted to rely upon the Simac Report as containing a full disclosure, and that no continuance can cure the prejudice.[2]

The Law Firm responds that the Simac Declaration is not an untimely expert report. The Law Firm argues that the bulk of the information in the Declaration was previously disclosed in the Simac Report, which the Declaration embraces and expands upon. The Law Firm asserts that the Declaration does not contain any new expert opinions, and that, to the extent the Declaration contains information not previously disclosed, that information responds directly to Rockwood's *Daubert* motion and the challenges mounted in the Larsen and Morrell Declarations. The Law Firm asserts that they are entitled to establish Simac's expert qualifications in response to a *Daubert* motion. The Law Firm contends that the four-factor test for exclusion of untimely testimony does not apply, and that even if it did, application of the factors compels a denial of Rockwood's motion.

The Court respectfully rejects Rockwood's contention that the Simac Declaration amounts to an untimely expert report. Having reviewed the Simac Report, the Larsen

---

[2] Rockwood asserts that the prejudice cannot be cured through a continuance because the burden that Rockwood hopes to avoid through its motions is "the time and expense of an unqualified witness's deposition." (Doc. No. 125.)

4

Declaration and the Morrell Declaration challenging that Report, and the Simac Declaration, the Court concludes that the Simac Declaration is in the nature of a supplemental report offered to rebut the criticisms raised in the Larsen Declaration and the Morrell Declaration. The Simac Declaration is not inconsistent with the Simac Report, provides greater detail with respect to Simac's qualifications and experience relative to segmental retaining wall blocks, and directly responds to the Larsen and Morrell Declarations.

The pretrial report does not provide a deadline for rebuttal or supplemental expert reports. The Simac Declaration was filed on June 8, 2011, just three weeks after Rockwood filed the Larsen Declaration and the Morrell Declaration.[3] The Court concludes that the Simac Declaration is not untimely. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii) (absent stipulation or court order, expert testimony offered solely to contradict or rebut evidence on the same subject matter disclosed in another party's expert report must be disclosed within thirty days after other party's disclosure). Accordingly, Rockwood's motion to strike the Simac Declaration is denied.

## II.     Motion to Exclude Simac's Testimony

Rockwood moves to exclude Simac's testimony pursuant to Fed. R. Evid. 702 and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Before accepting the testimony of an expert witness, the trial court

---

[3]     Rockwood's contention that the Simac Declaration is an untimely expert report would apply with at least equal force to the Morrell Declaration, which was filed nearly seven weeks after the deadline contained in the pretrial report and six weeks after the Simac Declaration, and on which Rockwood relies in its *Daubert* motion.

is charged with a "gatekeeper" function of determining whether an opinion is based upon sound, reliable theory, or whether it constitutes rank speculation. *Id.* at 589-90. In *Daubert*, the United States Supreme Court imposed an obligation upon trial court judges to ensure that scientific testimony is not only relevant, but also reliable under the Rules of Evidence. *Id*. at 579.

The proposed expert testimony must meet three prerequisites to be admissible under Federal Rule of Evidence 702. *Lauzon v. Senco Prods., Inc*., 270 F.3d 681, 686 (8th Cir. 2001). "First, evidence based on scientific, technical or other specialized knowledge must be useful to the fact-finder in deciding the ultimate issue of fact." *Id*. "[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). Second, the proposed expert must be qualified. *Id*. Third, the proposed evidence must be reliable. *Id*. The proponent of the expert testimony bears the burden to prove its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

In determining whether the proposed expert testimony is reliable, the Court can consider: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known rate of potential error; and (4) whether the theory has been generally accepted. *Daubert*, 509 U.S. at 593-94. The purpose of these requirements "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in

6

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

In *Kuhmo Tire*, the Supreme Court determined, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. In other words, a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony. *Id*. The objective of that requirement is to ensure the reliability and relevancy of expert testimony. *Id*.

The Court's focus should be on whether the testimony is grounded upon scientifically valid reasoning or methodology. *United States v. Dico, Inc.*, 266 F.3d 864, 869 (8th Cir. 2001). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001).

Rockwood asserts that Simac is not qualified to testify as an expert in this matter. Rockwood argues that the art area for purposes of the Vertica Patents is the design and fabrication of molds for the manufacture of concrete blocks and the design and manufacture of the blocks themselves. Rockwood contends that Simac's only experience is with the engineering, design, and construction of segmental retaining walls, and that he

is therefore not qualified to render an opinion on the design and manufacture of molds and concrete blocks.  Rockwood also takes issue with the fact that the Simac Report fails to disclose that Simac owns any patents.

In addition to the alleged lack of qualifications, Rockwood asserts that Simac fails to offer any scientific methodology in support of his opinions.  Rockwood asserts that Simac does not claim to have interviewed Larsen, a mold maker who worked with Rockwood; that Simac does not claim to have reviewed the depositions taken in this matter; and that Simac does not describe the process of mold-making.  Rockwood argues that Simac offers no methodology to support his statements regarding the time frame for mold production, block production, and curing.  Rockwood asserts that certain language used by Simac, such as "direct conflict" and "rounded shapes," betrays a lack of qualifications and would not assist a fact finder.

The Law Firm responds that Simac is well-qualified to render his opinions as a skilled in the art expert given his substantial tenure in the segmental retaining wall industry, based on his education and training as a professional engineer, and due to his significant experience in the design and manufacture of segmental retaining wall blocks and segmental retaining walls.  The Law Firm argues that Simac has worked closely with several block manufacturers during his career with respect to block design and manufacturing and has specific knowledge of the block manufacturing process and the role of block molds in the manufacturing process.

The Law Firm asserts that it is disingenuous for Rockwood to claim that one who designs and constructs segmental retaining walls lacks the qualifications necessary to

opine on the method by which segmental retaining wall blocks are secured in such walls. The Law Firm argues that the only utility claimed for the blocks at issue in this case is the construction of a segmental retaining wall and that the jury in the Anchor case found that Rockwood's Classic Block infringed two claims of the '183 Patent and two claims of the '129 Patent—a claim for a retaining wall block, and a second claim for the retaining wall itself constructed from the blocks, in each patent. The Law Firm also notes that Simac in fact owns a patent, on which he is a co-inventor, entitled "Reinforced Retaining Wall Method and Construction," and that Simac has a personal understanding and experience with the patent process, the subject of claim infringement, and the role of prior art in patent prosecution. The Law Firm asserts that Simac's opinions are reliable and are based on his knowledge and experience.

The Court concludes that Simac's testimony is reliable and admissible, subject to a proper foundation being laid. Simac is a professional engineer with over twenty years of experience in designing and constructing segmental retaining walls and the concrete blocks for use in such walls. He is the principal author of the "Design Manual for Segmental Retaining Walls (Modular Concrete Block Retaining Wall Systems)," which was published by the National Concrete Masonry Association in 1993. The Court concludes that Simac is qualified to offer expert testimony regarding the Vertica Patents, which include not only claims for blocks used to construct retaining walls, but also claims for the retaining walls constructed using those blocks.

Subject to the Law Firm establishing proper foundation for the opinions given, Rockwood's challenges go to the weight and credibility, not the admissibility, of Simac's

testimony.  Rockwood purports to challenge the methodology Simac used in reaching his conclusions, yet Rockwood supports this assertion largely by claiming Simac lacks the necessary qualifications, knowledge, and expertise.  Simac relies on his expertise as a registered professional engineer working in the design and construction of segmental retaining walls, his personal knowledge of the patent process, his specific knowledge and understanding of the development of the segmental retaining wall industry, and his experience working closely with several block manufacturers with respect to block design and manufacturing including specific knowledge of the block manufacturing process and the role of block molds in the manufacturing process.  Rockwood may challenge the foundation for Simac's opinions at trial.  If that foundation is laid, Rockwood may test the credibility of Simac's testimony on cross examination, rebut the testimony with its own witnesses, and submit its own contrary expert evidence, and the jury can determine the weight and credibility to given Simac's testimony.  Therefore, Rockwood's *Daubert* motion is denied.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

     1.     Rockwood's *Daubert* Motion to Strike Opinion Testimony of Michael R. Simac (Doc. No. [110]) is **DENIED**; and

     2.     Rockwood's Motion to Strike Declaration of Michael R. Simac (Doc. No. [124]) is **DENIED**.

Dated:  July 18, 2011                          s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge